NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GARY R. AGNEW,**
*Petitioner*

**v.**

**UNITED STATES POSTAL SERVICE,**
*Respondent*

---

2023-1688

---

Petition for review of the Merit Systems Protection Board in Nos. PH-0752-04-0423-C-1, PH-0752-04-0425-C-1.

---

Decided:  February 7, 2024

---

GARY R. AGNEW, Parrish, FL, pro se.

KELLY GEDDES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, STEVEN JOHN GILLINGHAM, PATRICIA M. MCCARTHY.

---

Before PROST, SCHALL, and REYNA, *Circuit Judges*.

PER CURIAM.

Gary R. Agnew appeals a decision of the Merit Systems Protection Board ("Board") denying his petition for enforcement that sought back pay and related benefits from the United States Postal Service ("Postal Service"). We affirm.

BACKGROUND

Mr. Agnew, a preference-eligible veteran, was employed with the Postal Service. In February 2001, he underwent a total knee replacement due to an on-the-job injury. S.A. 51.[1] He subsequently began collecting benefits through the Office of Workers' Compensation Programs ("OWCP") and did not return to work. In December 2001, the Postal Service conducted an undercover investigation of Mr. Agnew's ability to work. S.A. 51. This investigation ultimately resulted in his indictment in August 2003 for fifteen felony counts of mail fraud and one felony count of federal compensation fraud related to his collection of OWCP benefits. S.A. 51. A jury convicted Mr. Agnew on all counts in March 2004. S.A. 52.

In April 2004, Mr. Agnew sought a return to duty. The Postal Service proposed and imposed an indefinite suspension, effective June 18, 2004, and subsequently proposed and imposed his removal, effective August 27, 2004. S.A. 52. Mr. Agnew filed several appeals with the Board in 2004, including a challenge to his removal and a restoration claim, all of which were delayed for numerous years due to his imprisonment and health issues. S.A. 2.

In November 2015, an administrative judge sustained Mr. Agnew's August 2004 removal from the Postal Service and denied his restoration claim. S.A. 2. The administrative judge found, however, that Mr. Agnew had been

---

[1] "S.A" refers to the supplemental appendix filed with the government's informal brief.

erroneously subjected to a constructive suspension from April 2 to June 17, 2004, and an improper indefinite suspension from June 18 to August 26, 2004. S.A. 2. The administrative judge therefore ordered the cancellation of the constructive and indefinite suspensions for the total period of April 2 to August 26, 2004, and ordered the payment of back pay, interest, and other relevant benefits. S.A. 2. In a December 2016 final order, the Board affirmed the administrative judge's decision. S.A. 49, 63.

Mr. Agnew was paid for the period from May 7 to June 16, 2004, but the Postal Service notified Mr. Agnew that he was not entitled to back pay for the remaining periods—namely, April 2 to May 6, 2004, and June 17 to August 26, 2004—because the agency determined he had not been ready, willing, and able to work during those two periods (the "key periods"). S.A. 2.

On February 11, 2017, Mr. Agnew filed a petition for enforcement due to the Postal Service's refusal to provide back pay for the key periods. S.A. 2, 25–48. In a compliance initial decision, the administrative judge granted the petition for enforcement. S.A. 11. She determined based on three main pieces of evidence submitted by the Postal Service that the agency had not shown that Mr. Agnew was incapable of working during the key periods.

First, the administrative judge considered a medical record from a September 2003 physical examination of Mr. Agnew. S.A. 13. The medical examiner found that Mr. Agnew "reports that he is unable to work; however, I do feel he is capable of working in a sedentary capacity." S.A. 67. Second, the administrative judge considered the Postal Service's submission of a certification from the Department of Veterans Affairs ("VA") providing that Mr. Agnew was "permanently and totally disabled since March 13, 2003, due to service connected disability or disabilities." S.A. 13, 68. Third, the administrative judge considered an undated excerpt of a deposition transcript submitted by the

Postal Service in which Mr. Agnew stated that he was unable to perform his regular job duties as of May 2002. S.A. 13, 69–70.

The administrative judge concluded that none of those three pieces of evidence proved that Mr. Agnew "was incapable of working during the [key periods] as the documentation submitted by the agency does not cover that specific period of time." S.A. 13–14. In part, that conclusion was based on a misreading of the VA certification as being dated March 13, 2013, rather than March 13, 2003. S.A. 13 (stating that the VA found Mr. Agnew "permanently and totally disabled since March 13, 2013"); S.A. 4 ("[T]he administrative judge mistakenly described [the certification] as covering only the period since March 2013."). Finding Mr. Agnew capable of working, the administrative judge granted the petition for enforcement. S.A. 11. The agency petitioned for review. S.A. 2.

On February 6, 2023, the Board vacated the initial compliance decision and denied Mr. Agnew's petition for enforcement. S.A. 1. The Board determined that the Postal Service did in fact meet its burden to show that Mr. Agnew was not ready, willing, and able to work during the key periods. The Board found the September 2003 evaluation—in which Mr. Agnew reported that he had not worked for two years—to be persuasive evidence that he was unable or unwilling to work, as well as the VA's certification that he was permanently and totally disabled in March 2003. S.A. 4. On the other hand, the Board found the third piece of evidence, the deposition transcript, of little utility because the excerpt lacked context; for example, Mr. Agnew's name was not included in the excerpted pages. S.A. 5. Because the Board found the agency's first two pieces of evidence persuasive, the burden shifted to Mr. Agnew to show entitlement to back pay. The Board concluded Mr. Agnew presented little to no evidence to suggest he was ready, willing, and able to work during the key periods. S.A. 5–6.

Mr. Agnew appeals the Board's decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

In reviewing the Board's decision, we "review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "Under the substantial evidence standard, this court reverses the Board's decision only if it is not supported by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shapiro v. Soc. Sec. Admin.*, 800 F.3d 1332, 1336 (Fed. Cir. 2015) (cleaned up).

The primary issue raised by Mr. Agnew's petition for enforcement is whether the Postal Service must provide back pay for the key periods because Mr. Agnew was ready, willing, and able to work at that time. Under regulations interpreting the Back Pay Act, in computing the amount of back pay owed under 5 U.S.C. § 5596, an agency may not include "[a]ny period during which an employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury." 5 C.F.R. § 550.805(c)(1); *see also* 5 U.S.C. § 5596(b)(1)(A)(i) (Back Pay Act).

We conclude that the Board's decision that Mr. Agnew was not ready, willing, and able to work during the key periods is supported by substantial evidence. Turning to the first piece of evidence, the September 2003 medical examination, the Board found the examination record—which was dated just a few months earlier than the key periods—to be persuasive. Mr. Agnew himself "reported that he had not worked for more than 2 years and was still unable to work because of physical limitations," leading the Board to reasonably conclude that "[a]t a minimum, that suggests

[Mr. Agnew] was not willing to work in the months leading up to the period at issue, even if an examining physician thought he was able." S.A. 5. Regarding the second piece of evidence, the Board similarly reasoned that because the VA certification provided that Mr. Agnew became permanently and totally disabled in March 2003, "[t]he [VA] certification provides further support for the agency's assertion that [Mr. Agnew] was not ready, willing, and able to work during the claimed back pay period." S.A. 5. This evidence adequately supports the Board's conclusion.

In light of this record evidence, the burden shifted to Mr. Agnew to show that he was indeed ready, willing, and able to work during the key periods. Mr. Agnew submitted "a July 2003 letter from the Department of Labor to his treating physician, requesting information about his physical limitations," and additionally relied on the aforementioned September 2003 medical examination in which the examiner opined that Mr. Agnew "could work in a sedentary capacity." S.A. 5. But apart from this evidence, the Board noted "no other evidence concerning whether he was ready, willing, and able to work" during the key periods. S.A. 5. On the record before it, the Board reasonably held that the evidence was not in Mr. Agnew's favor. We conclude that substantial evidence supports the Board's conclusion that Mr. Agnew was not ready, willing, and able to work.

Indeed, on appeal, Mr. Agnew presents a somewhat counterintuitive argument that he was not fit to return to duty. *See* Informal Br. 13, 16–17 (explaining he "was indeed disabled and was not fit to return to duty").[2] This point may relate to his additional argument on appeal that the OWCP improperly terminated his benefits. *Id.* at 21–22 (seeking reinstatement of his compensation benefits).

---

[2] We refer to the page numbers generated by the electronic case filing system.

Those arguments were not the subject of his petition for enforcement, which concerns the Postal Service's payment of back pay for the key periods. *See* S.A. 25–30. We therefore lack jurisdiction to consider arguments related to his OWCP benefits on appeal.

We similarly decline to review his argument that his conviction for mail fraud "must also be removed" because he was "entitled to those checks sent by DOL/OWCP." Informal Br. 17. We lack jurisdiction to review his criminal conviction. *See* 28 U.S.C. § 1295; *United States v. Clark*, No. 24-1186, 2024 WL 273450, at *1 (Fed. Cir. Jan. 25, 2024) (nonprecedential) ("This is a court of limited jurisdiction, which does not include jurisdiction over criminal cases."); *see also United States v. Agnew*, 171 F. App'x 376, 379 (2d Cir. 2006) (affirming conviction on appeal).

## CONCLUSION

We have considered Mr. Agnew's arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

## **AFFIRMED**

### COSTS

No costs.